UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICHELLE ELIZABETH MARTELL,<br><br>                Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>                Defendant. | Case No. C12-1961-RSL-BAT<br><br>**REPORT AND RECOMMENDATION** |

Michelle Elizabeth Martell seeks review of the denial of her Supplemental Security Income and Disability Insurance Benefits applications.  She contends the ALJ erred by (1) finding she could work as an egg sorter and plastic computer board assembler; (2) failing to account for all limitations identified in the medical evidence; and (3) discounting her credibility. Dkt. 14.  As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings, pursuant to sentence four.

## BACKGROUND

Ms. Martell is currently 33 years old, did not graduate from high school and does not have a GED, and has worked as a switch board operator, dishwasher, cashier, and housekeeper.[1]

---

[1] Tr. 54, 140-51, 166, 205.

REPORT AND RECOMMENDATION - 1

On August 26, 2008, she applied for benefits, alleging disability as of April 1, 1998.[2] Tr. 140-51. Her applications were denied initially and on reconsideration. Tr. 78-84, 87-91. The ALJ conducted a hearing on March 29, 2011(Tr. 47-73), finding Ms. Martell not disabled. Tr. 31-41. As the Appeals Council denied Ms. Martell's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1-5.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[3] the ALJ found:

**Step one:** Ms. Martell had not engaged in substantial gainful activity since November 1, 2006.

**Step two:** Ms. Martell's dysthymia, anxiety disorder, methadone maintenance, bilateral carpal tunnel syndrome (status post right release), and obesity are severe impairments.

**Step three:** These impairments did not meet or equal the requirements of a listed impairment.[4]

**Residual Functional Capacity ("RFC"):** Ms. Martell can perform light work with some exceptions: she can occasionally lift 20 pounds and frequently lift 10 pounds; she can stand and walk with normal breaks for about six hours of an eight-hour work day and sit with normal breaks for about six hours of an eight-hour work day; she can never climb ladders, ropes, and scaffolds; she can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; she is limited to frequent reaching in all directions bilaterally, as well as frequent handling and fingering bilaterally; she can perform simple routine tasks; she can perform work requiring no contact with the general public; and she can have only occasional superficial contact with coworkers.

**Step four:** Ms. Martell cannot perform her past work.

**Step five:** As there are jobs that exist in significant numbers in the national economy that Ms. Martell can perform, she is not disabled.

Tr. 31-41.

//

---

[2] Ms. Martell amended her alleged onset date to November 1, 2006, at the administrative hearing. Tr. 53.
[3] 20 C.F.R. §§ 404.1520, 416.920.
[4] 20 C.F.R. Part 404, Subpart P, Appendix 1.

REPORT AND RECOMMENDATION - 2

## DISCUSSION

**A.   The ALJ Erred in Evaluating Medical Evidence of Manipulative Limitations**

Ms. Martell contends that the ALJ's RFC assessment does not fully account for the physical limitations documented in the record, specifically in Dr. Heilbrunn's opinion. Dr. Heilbrunn performed a consultative examination of Ms. Martell in August 2009, and the ALJ summarized the opinion (Tr. 479-84) and explained why she gave only "some weight" to it:

> Dr. Heilbrunn performed a physical examination and reported his clinical findings. It was his opinion that the claimant: has no postural range of motion limitations; is not limited in sitting, standing, walking, kneeling, crawling, crouching, or stooping; has incomplete left fist formation, decreased left grip strength and fine and dexterous movements in thumb opposition; has decreased sensation in the left medial nerve distribution; has no other manipulative range of motion limitations; is able to lift and carry a maximum of three pounds with the left and ten pounds with the right hand; has a limitation in the use of the left hand in fingering and feeling and somewhat in handling; has no limitation in the use of her right hand/arm; may have a limitation in climbing because of decreased left grip strength; has no environmental limitations; has limitations in the use of her left hand, primarily in firm grasping, feeling, fine and dexterous movements, and lifting/carrying heavy loads; and the claimant's conditions may improve with the use of a left wrist brace, and for the most part her limitations will continue for at least 8-12 months. The undersigned gives only some weight to this opinion because although the evidence supports some limitations from bilateral carpal tunnel syndrome, the extent of the severity of the functional limitations are unsupported by his own clinical findings, the extent of limitations are inconsistent with the claimant's reported activities of daily living, and inconsistent with other examinations of record ([Tr. 371-96]).

Tr. 38-39. Ms. Martell claims the ALJ erred in failing to specify precisely which limitations are unsupported by clinical findings, what medical evidence contradicts Dr. Heilbrunn's conclusions, and which daily activities are inconsistent.

As noted by the Commissioner, the only specific, quantified limitation identified by Dr. Heilbrunn that the ALJ excluded from her RFC assessment was the lift/carry restriction, and thus it can be inferred that the ALJ referred to that restriction when explaining why Dr. Heilbrunn's opinion was discounted. *See* Dkt. 17 at 11. The ALJ correctly found that Dr. Heilbrunn's

REPORT AND RECOMMENDATION - 3

lift/carry restriction is not supported by his clinical findings: he found that Ms. Martell had 5/5 strength in both of her upper extremities, and a grip strength of 5/5 in her right hand and 4/5 in her left hand, and that she had no muscle atrophy.  Tr. 482.  It is thus unclear how Dr. Heilbrunn reached his conclusion that Ms. Martell could lift/carry no more than three pounds in her left hand and 10 pounds in her right, because his testing of her motor strength and muscle bulk and tone is not consistent with his extreme lift/carry limitations.  The exhibit cited by the ALJ contains further evidence of Ms. Martell's intact strength.  *See* Tr. 376, 380, 383.  These reasons are sufficiently specific to support the ALJ's reasoning, even assuming the ALJ erred in failing to identify Ms. Martell's specific daily activities that are inconsistent with Dr. Heilbrunn's lift/carry restriction.

To the degree that Ms. Martell contends the ALJ's RFC assessment fails to account for Dr. Heilbrunn's manipulative limitations, her argument is speculative on its face.  Dr. Heilbrunn did not quantify the severity of her left-handed manipulative limitation; he simply indicated that she had "decreased left grip strength and fine and dexterous movements in thumb opposition."  Tr. 484.  It is not clear at first glance that the ALJ's limitation to "frequent" bilateral handling and fingering would not fully account for Dr. Heilbrunn's opinion.

Ms. Martell's argument moves out of the realm of speculation, however, with a citation to the findings of the State agency single decision maker, who reviewed Dr. Heilbrunn's report and quantified Ms. Martell's manipulative limitation as a restriction to "occasional" fingering and handling with her left hand.  *See* Tr. 493. This finding was affirmed by Ronald Goldberg, M.D.,[5] but the ALJ did not address this medical opinion.  This failure was error.  *See* 20 C.F.R. §§ 404.1512(b)(8), 404.1527(e)(2).  On remand, the ALJ shall assess the opinions of State

---

[5] Though Dr. Goldberg's credential is not indicated on his affirmation (Tr. 494) of the single decisionmaker's findings, it can be found in the Case Development Sheet (Tr. 500).

REPORT AND RECOMMENDATION - 4

agency consultants regarding Ms. Martell's manipulative limitations and explain the weight given thereto.  Because this reconsideration may result in a modification of the ALJ's RFC assessment with regard to manipulative limitations, the Court cannot evaluate whether the undisputed step-five error is harmless as claimed by the Commissioner (Dkt. 17 at 18-20). Accordingly, if the ALJ reconfigures her RFC assessment on remand, additional vocational expert testimony would be required if she proceeds to step five.

B.     **The ALJ Did Not Err in Evaluating Medical Evidence of Obesity, Fatigue, and Medication Side Effects**

Ms. Martell contends that the ALJ's RFC assessment is also deficient because it fails to account for limitations caused by her obesity, fatigue, and medication side effects.  She has failed to cite any medical evidence establishing limitations not accounted for by the ALJ, however.  *See Roquemore v. Comm'r of Social Sec. Admin.*, 374 Fed.Appx. 693, 695 (9th Cir. 2010).

She points to the opinion of psychiatric consultative examiner David Sandvik, M.D., as supporting a limitation caused by fatigue and dependence on opiates, but Dr. Sandvik actually opined that particularly if Ms. Martell can taper off methadone, he believed she could "perform work activities consistently through a normal workday." Tr. 459.  Dr. Sandvik also indicated that he did not observe Ms. Martell to be lethargic, and believed her reports of fatigue could be caused by her opiate dependence rather than depression.  *Id.*  State agency medical consultant John F. Robinson, Ph.D., found that even accounting for the limitations caused by Ms. Martell's methadone use, she was capable of performing simple, repetitive tasks.  Tr. 477.  Ms. Martell has not established that the ALJ erred in relying (Tr. 38-39) on the opinions of Drs. Sandvik and Robinson in evaluating the effects of her fatigue and methadone side effects.

Furthermore, the limitations Ms. Martell ascribes to side effects of her Citalipram medication and obesity are not supported by the medical evidence.  Dkt. 14 at 20-21.  In some

REPORT AND RECOMMENDATION - 5

instances, the limitations are directly contradicted by medical evidence.  *See, e.g.*, Tr. 389 (treatment note indicating that Ms. Martell had experienced fatigue with Citalipram, but counteracted that by taking it at night instead of daytime), 484 (Dr. Heilbrunn's opinion that she has no postural range of motion limitations).  She cites her own statements as evidence of limitations, but because (as explained in the next section) the ALJ properly discounted her credibility, the ALJ did not err in failing to account for self-reported limitations.  *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

Lastly, to the extent that Ms. Martell contends that the ALJ should have considered the potential fatigue caused by her chronic hepatitis C, she cites no evidence that this condition ever caused her to be fatigued and thus has failed to identify error.  *See* Dkt. 14 at 21 n.3.

**C.     The ALJ Did Not Err in Discounting Ms. Martell's Credibility**

Ms. Martell contends that the ALJ erred in discounting her credibility in light of inaccurate statements made to providers regarding her drug use.  *See* Tr. 37.  She does not dispute that she inaccurately reported her drug use, but alleges that drawing a credibility inference against her is inappropriate because the ALJ did not explain how her failure to disclose her drug use was "material to the diagnosis or treatment of her physical problems."  Dkt. 14 at 23.  This is not the correct standard, however: inconsistent statements (about drug use, or in general) reflect a lack of credibility because they indicate that a claimant's statements are untrue, whether or not those statements were made for purposes of treatment.  *See, e.g.*, *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999).

The ALJ also cited a lack of corroboration in the medical record as a basis for discounting Ms. Martell's credibility.  She stated that there is "no objective medical evidence to

REPORT AND RECOMMENDATION - 6

support the alleged severity and limiting effects" of either Ms. Martell's physical *or* mental impairments.  Tr. 37.  She goes on to cite medical evidence showing minimal or unremarkable findings (Tr. 37 (citing Tr. 349, 374-77, 380, 383, 386-87, 394-95, 482-83, 505-06, 525, 540)) that would not *alone* establish that Ms. Martell's symptoms are not as severe as alleged, but is sufficient in combination with evidence of the inconsistent statements discussed above.  *See Rollins v. Massanari*, 261 F.3d 853, 855 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings pursuant to sentence four.  On remand, the ALJ should assess the opinions of State agency consultants regarding Ms. Martell's physical limitations and explain the weight given thereto.  If the ALJ reconfigures her RFC assessment on remand, additional vocational expert testimony would be required if she proceeds to step five.

A proposed order accompanies this Report and Recommendation.  Objections, if any, to this Report and Recommendation must be filed and served no later than **July 25, 2013.**  If no objections are filed, the matter will be ready for the Court's consideration on **July 26, 2013**.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  Objections and responses shall not exceed twelve pages.  The

///

REPORT AND RECOMMENDATION - 7

1  failure to timely object may affect the right to appeal.

2  DATED this 11th day of July, 2013.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 8